Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Kerry B. Brownlee (KB 0823)
kbrownlee@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Off-White LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OFF-WHITE LLC,<br><br>*Plaintiff*<br><br>v.<br><br>GUANGZHOU KESI E-COMMERCE CO., LIMITED d/b/a WWW.YOFANA.COM; and SHENZHEN BOSIDA ELECTRONICS CO., LTD. d/b/a WWW.YOFANA.COM,<br><br>*Defendants* | **CIVIL ACTION NO.:**<br>**23-cv-7452 (LJL)**<br><br>**1) TEMPORARY RESTRAINING ORDER; 2) ORDER RESTRAINING DEFENDANTS' WEBSITE AND DEFENDANTS' ASSETS WITH THE FINANCIAL INSTITUTIONS; 3) ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; 4) ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE; AND 5) ORDER AUTHORIZING EXPEDITED DISCOVERY**<br><br>**<u>FILED UNDER SEAL</u>** |

# GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiff or Off-White** | Off-White LLC |
| **Defendants** | Guangzhou Kesi E-Commerce Co., Limited d/b/a www.yofana.com; and Shenzhen Bosida Electronics Co., Ltd. d/b/a www.yofana.com |
| **Shoplazza** | Shoplazza Inc., with an address of 4/FL, Suite 11, Taihua Wutong Industrial Park Gushu Development Zone, Shenzhen, 518126 China; Shoplazza Corp., a Canadian company, with an address of 6/FL, 15 Allstate Parkway, Markham, L4B 3K8, Canada; and Shoplazza Hongkong Limited, a corporation formed under the Law of Hong Kong SAR China, with an address of 1903, 19/f Lee Garden One, 33 Hysan Avenue, Causeway Bay, Hong Kong, and any and all affiliated companies, which operate an e-commerce platform, available at www.shoplazza.com, that enables users to build websites, create online stores, and manage and market their businesses, among other things |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* application for: 1) a temporary restraining order; 2) an order restraining Defendants' Website (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery |
| **Igel Dec.** | Declaration of Brian Igel in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| **Off-White Products** | A young, successful luxury fashion label founded by the late American creative designer Virgil Abloh, specializing in men's and women's lifestyle and high-end streetwear, as well as shoes, accessories, jewelry, homeware and other ready-made goods |
| **Off-White Marks** | The marks covered by U.S. Trademark Registration Nos.: 5,119,602 for "OFF WHITE" for a variety of goods in Class 25 with a constructive date of first use of January 25, 2012; 5,713,397 for "OFF-WHITE" for a variety of goods in Class 25; 5,710,328 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 9; 5,572,836 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 25; |

i

| Term | Definition |
|---|---|
| | 5,710,287 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 14; 5,150,712 for ▨ for a variety of goods in Class 18 and 25; 5,710,288 for ▨ for a variety of goods in Class 14; 5,307,806 for ▨ for a variety of goods in Class 18 and 25; 6,303,583 for ▨ for a variety of goods in Class 25; 5,835,552 for ⤫ for a variety of goods in Class 9; 5,387,983 for ⤫ for a variety of goods in Class 25; 5,445,222 for ⤫ for a variety of goods in Class 25; 5,800,414 for (OFF) for a variety of goods in Class 9 and 25; 5,681,805 for ⤫ for a variety of goods in Class 9; 5,663,133 for ⇉ for a variety of goods in Class 25; 6,054,044 for ⤫ for a variety of goods in Class 25; 6,272,565 for ⬆⬆ for a variety of goods in Class 25; 6,290,768 for ⏑⏑ for a variety of goods in Class 25; 6,114,562 for **OFF** for a variety of goods in Class 25; 6,131,346 for **OFF** for a variety of goods in Class 18; 6,035,585 for 🖐 for a variety of goods in Class 25; 6,137,880 for Off White 🖐🖐🖐 |

ii

| Term | Definition |
|---|---|
|  | for a variety of goods in Class 25; 6,505,708 for ![Off mark] for a variety of goods in Class 14; 6,002,434 for ![shoe mark] for a variety of goods in Class 25; 6,126,306 for ![shoe mark] for a variety of goods in Class 25; and 6,681,777 for ![mark] for a variety of goods in Class 25 |
| Counterfeit Products | Products bearing the Off-White Marks, and/or products in packaging and/or containing labels bearing the Off-White Marks, and/or bearing or used in connection with marks that are confusingly similar to the Off-White Marks |
| Defendants' Website | Defendants' website located at www.yofana.com, which is held by or associated with Defendants, and/or their respective officers, employees, agents, servants and on which they use the Off-White Marks, that they operate to communicate with consumers regarding their Counterfeit Products and/or through which consumers purchase Counterfeit Products for delivery in the U.S. |
| Defendants' Assets | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| Defendants' Financial Accounts | Any and all financial accounts associated with or utilized by any Defendants or Defendants' Website (whether said account is located in the U.S. or abroad) |
| Financial Institutions | PayPal Inc. ("PayPal"), Visa Inc. and its affiliated entities ("Visa"), Mastercard Inc. and its affiliated entities ("Mastercard"), American Express Company and its affiliated entities ("American Express"), and JCB Co., Ltd. |
| Third Party Service Providers | Any third party providing services in connection with Defendants' Counterfeit Products and and/or Defendants' Website, including, without limitation, Shoplazza, Internet Service Providers ("ISP"), back-end service providers, web designers, merchant account providers, any providing shipping and/or fulfillment services, website hosts (such as Cloudflare, Inc.), domain name registrars (such as Name.com, Inc.), and domain name registries |

On this day, the Court considered Plaintiff's *ex parte* Application for the following: 1) a temporary restraining order; 2) an order restraining Defendants' Website and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery against Defendants, Third Party Service Providers and Financial Institutions in light of Defendants' intentional and willful offerings for sale and/or sales of Counterfeit Products.[1] Having reviewed the Application, Declarations of Brian Igel and Gabriela N. Nastasi, along with exhibits attached thereto and other evidence submitted in support thereof, the Court makes the following findings of fact and conclusions of law:

## **PRELIMINARY FACTUAL FINDINGS & CONCLUSIONS OF LAW**

1. Off-White, launched in or about 2013, is the owner of a young, successful and high-end lifestyle streetwear line of men's and women's apparel, as well as accessories, jewelry, homeware and other ready-made goods which are distributed through various channels of trade in the United States and abroad.

2. The Off-White Products are marketed under the Off-White Marks.

3. The Off-White Products are sold at luxury retailers such as Selfridges and Bergdorf Goodman, as well as Off-White's boutiques located in prominent fashion epicenters such as London, Tokyo, Hong Kong, Seoul, Beijing, Shanghai, Toronto, Shenyang, Xian, Dubai, Bangkok, Busan, Macau, Manila, Mykonos, Tianjin, Paris, Vancouver, Kuala Lumpur, Sydney, Taipei, Melbourne, Manchester, Singapore and New York City.

---

[1] Where a defined term is referenced herein and not defined herein, the defined term should be understood as it is defined in the Glossary.

1

4. Since the launch of Off-White approximately ten (10) years ago, the Off-White Brand and Off-White Products have been featured in numerous press publications, including, but not limited to, *New York Magazine*, *GQ*, *W Magazine*, *Vogue* and *The Business of Fashion*, among others.

5. *Lyst* named Off-White as the "hottest fashion brand in the World" and Off-White has consistently been named as a "top brand" on *Lyst*.

6. While Off-White has gained significant common law trademark and other rights in its Off-White Marks and Off-White Products through its use, advertising and promotion, Off-White also protected its valuable rights by filing for and obtaining federal trademark registrations.

7. For example, Off-White owns the following U.S. Trademark Registration Nos.: 5,119,602 for "OFF WHITE" for a variety of goods in Class 25 with a constructive date of first use of January 25, 2012; 5,713,397 for "OFF-WHITE" for a variety of goods in Class 25; 5,710,328 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 9; 5,572,836 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 25; 5,710,287 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 14; 5,150,712 for [design mark] for a variety of goods in Class 18 and 25; 5,710,288 for [design mark] for a variety of goods in Class 14; 5,307,806 for [design mark] for a variety of goods in Class 18 and 25; 6,303,583 for [design mark] for a variety of goods in Class 25; 5,835,552 for [design mark] for a variety of goods in Class 9; 5,387,983 for [design mark] for a variety of goods in Class 25; 5,445,222 for [design mark] for a variety of goods in Class 25;

2



5,800,414 for ⊛ for a variety of goods in Class 9 and 25; 5,681,805 for ✕ for a variety of goods in Class 9; 5,663,133 for ▯ for a variety of goods in Class 25; 6,054,044 for ✕ for a variety of goods in Class 25; 6,272,565 for ↑↑ for a variety of goods in Class 25; 6,290,768 for ⊙ for a variety of goods in Class 25; 6,114,562 for **OFF** for a variety of goods in Class 25; 6,131,346 for **OFF** for a variety of goods in Class 18; 6,035,585 for Off✋ for a variety of goods in Class 25; 6,137,880 for Off✋ White✋ for a variety of goods in Class 25; 6,505,708 for Off✋ for a variety of goods in Class 14; 6,002,434 for 👟 for a variety of goods in Class 25; 6,126,306 for 👟 for a variety of goods in Class 25; and 6,681,777 for ⚷ for a variety of goods in Class 25.

8. Defendants are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products through Defendants' Website.

9. Defendants are not, nor have they ever been, authorized distributors or licensees of the Off-White Products. Neither Plaintiff, nor any of Plaintiff's authorized agents, have consented to Defendants' use of the Off-White Marks, nor has Plaintiff consented to Defendants' use of marks

3

that are identical or confusingly similar thereto and constitute a counterfeiting or infringement of the Off-White Marks.

10. Plaintiff is likely to prevail on its Lanham Act claims at trial.

11. As a result of Defendants' infringements, Plaintiff, as well as consumers, are likely to suffer immediate and irreparable losses, damages and injuries before Defendants can be heard in opposition, unless Plaintiff's Application for *ex parte* relief is granted:

   a. Defendants have offered for sale and sold substandard Counterfeit Products in the United States that infringe the Off-White Marks;

   b. Plaintiff has well-founded fears that more Counterfeit Products will appear in the United States marketplace; that consumers may be misled, confused and disappointed by the quality of these Counterfeit Products, resulting in injury to Plaintiff's reputation and goodwill; and that Plaintiff may suffer loss of sales for the Off-White Products; and

   c. Plaintiff has well-founded fears that if it proceeds on notice to Defendants on this Application, Defendants will: (i) secret, conceal, destroy, alter, sell-off, transfer or otherwise dispose of or deal with Counterfeit Products or other goods that infringe the Off-White Marks, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (ii) inform their suppliers and others of Plaintiff's claims with the result being that those suppliers and others may also secret, conceal, sell-off or otherwise dispose of Counterfeit Products or other goods infringing the Off-White Marks, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (iii) secret, conceal, transfer or

otherwise dispose of their ill-gotten proceeds from its sales of Counterfeit Products or other goods infringing the Off-White Marks and records relating thereto that are in their possession or under their control and/or (iv) change the host of Defendants' Website, create new websites under new or different names through which Defendants will continue selling Counterfeit Products and/or using the Off-White Marks, or spurious designations that are identical to, substantially indistinguishable from, or confusingly similar to, the Off-White Marks, with little to no consequence.

12. The balance of potential harm to Defendants of being prevented from continuing to profit from their illegal and infringing activities if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its business, the goodwill and reputation built up in and associated with the Off-White Marks if a temporary restraining order is not issued.

13. The public interest favors issuance of the temporary restraining order in order to protect Plaintiff's interests in and to its Off-White Marks, and to protect the public from being deceived and defrauded by Defendants' passing off of their substandard Counterfeit Products as Off-White Products.

14. Plaintiff has not publicized its request for a temporary restraining order in any way.

15. Service on Defendants via electronic means is reasonably calculated to result in proper notice to Defendants.

16. If Defendants are given notice of the Application, they are likely to secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of Counterfeit Products or other goods infringing the Off-White Marks. Therefore, good cause exists for granting Plaintiff's request for an asset restraining order. It typically takes the Financial Institutions a minimum of five (5) days after service of the Order to locate, attach and freeze Defendants' Assets and/or

Defendants' Financial Accounts and it is anticipated that it will take the Third Party Service Providers a minimum of five (5) days to freeze Defendants' Website. As such, the Court allows enough time for Plaintiff to serve the Financial Institutions and Third Party Service Providers with this Order, and for the Financial Institutions and Third Party Service Providers to comply with the Paragraphs I(B)(1) and I(C) of this Order, respectively, before requiring service on Defendants.

17. Similarly, if Defendants are given notice of the Application, they are likely to destroy, move, hide or otherwise make inaccessible to Plaintiff the records and documents relating to Defendants' manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products. Therefore, Plaintiff has good cause to be granted expedited discovery.

## ORDER

Based on the foregoing findings of fact and conclusions of law, Plaintiff's Application is hereby **GRANTED** as follows:

### I.   Temporary Restraining Order

A. IT IS HEREBY ORDERED, as sufficient cause has been shown, that Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions in the Untied States (with the exception of the acts and omissions described in paragraphs 6–9 below, which shall apply worldwide) for fourteen (14) days from the date of this order, and for such further period as may be provided by order of the Court:

1) manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

2) directly or indirectly infringing in any manner any of Plaintiff's Off-White Marks;

3) using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Off-White Marks to identify any goods or service not authorized by Plaintiff;

4) using any of Plaintiff's Off-White Marks and/or any other marks that are confusingly similar to the Off-White Marks on or in connection with Defendants' manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the Counterfeit Products;

5) using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiff;

6) secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendant's Website or Defendants' Assets and/or the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

7) effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform or website, or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order;

8) linking, transferring, selling and/or operating Defendants' Website; and

9) knowingly instructing any other person or business entity to engage in any of the activities referred to in subparagraphs I(A)(1) through I(A)(8) above and I(B)(1) and I(C)(1) through I(C)(2) below.

B. IT IS HEREBY ORDERED, as sufficient cause has been shown, that Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers and Financial Institutions who satisfy those requirements and are identified in this Order are hereby restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days from the date of this order, and for such further period as may be provided by order of this Court:

1) secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court.

C. IT IS HEREBY ORDERED, as sufficient cause has been shown, that immediately upon receipt of service of this Order, Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers who satisfy those requirements, are restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days from the date of this order, and for such further period as may be provided by order of this Court:

1) operating Defendants' Website;

2) permitting the transfer, sale and/or assignment of Defendants' Website; and

3) instructing, aiding, or abetting Defendants and/or any other person or business entity in engaging in any of the activities referred to in subparagraphs I(A)(1) through I(A)(8),

8

I(B)(1), and I(C)(1) through I(C)(2) above, including, without limitation, by providing services necessary for Defendants to continue operating Defendants' Website in violation of this Order.

## II. Order to Show Cause Why A Preliminary Injunction Should Not Issue And Order Of Notice

A. Defendants are hereby ORDERED to show cause before this Court in Courtroom 15C of the United States District Court for the Southern District of New York at 500 Pearl Street/40 Foley Square, New York, New York on September 11, 2023 at 10:00 a.m. or at such other time that this Court deems appropriate, why a preliminary injunction, pursuant to Fed. R. Civ. P. 65(a), should not issue.

B. IT IS FURTHER ORDERED that opposing papers, if any, shall be filed electronically with the Court and served on Plaintiff's counsel by delivering copies thereof to the office of Epstein Drangel LLP at 60 East 42nd Street, Suite 1250, New York, NY 10165, Attn: Jason M. Drangel on or before September 5, 2023. Plaintiff shall file any Reply papers on or before September 7, 2023.

C. IT IS FURTHER ORDERED that Defendants are hereby given notice that failure to appear at the show cause hearing scheduled in **Paragraph II(A)** above may result in the imposition of a preliminary injunction against them pursuant to Fed. R. Civ. P. 65, which may take effect immediately upon the expiration of this Order, and may extend throughout the length of the litigation under the same terms and conditions set forth in this Order.

## III. Asset Restraining Order

A. IT IS FURTHER ORDERED pursuant to Fed. R. Civ. P. 64 and 65 and N.Y. C.P.L.R. 6201 and this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order, the Financial Institutions shall locate and attach Defendants'

9

Financial Accounts and shall provide written confirmation of such attachment to Plaintiff's counsel.

### IV.   Order Authorizing Bifurcated and Alternative Service by Electronic Means

A. IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service by electronic means ordered herein shall be deemed effective as to certain Third Party Service Providers and Financial Institutions through the pendency of this action.

B. IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service by electronic means ordered herein shall be made within five (5) days of the Financial Institutions and Third Party Service Providers' compliance with **Paragraphs III(A) and V(B)-(C)** of this Order.

C. IT IS FURTHER ORDERED, as sufficient cause has been shown, that service may be made and shall be deemed effective as to the following if it is completed by the below means:

  1) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal Inc. will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

  2) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Name.com, Inc. will be able to download a PDF copy of this Order via electronic mail to abuse@name.com;

  3) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Cloudflare, Inc. will be able to download a PDF copy of this Order via electronic mail to abuse@cloudflare.com;

  4) on Shoplazza, pursuant to Federal Rule of Civil Procedure 45(b);

5)     delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Visa will be able to download a PDF copy of this Order via electronic mail to businessconduct@visa.com;

6)     delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Mastercard will be able to download a PDF copy of this Order via electronic mail to ipinquiries@mastercard.com; and

7)     delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where American Express will be able to download a PDF copy of this Order via electronic mail to amexsru@aexp.com.

### V.    Order Authorizing Expedited Discovery

A. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days after receiving service of this Order, each Defendant shall serve upon Plaintiff's counsel a written report under oath providing:

     a. its true name and physical address;

     b. the name and location and URL of any and all websites that Defendants own and/or operate;

     c. the complete sales records for any and all sales of Counterfeit Products, including but not limited to number of units sold, the price per unit, total gross revenues received (in U.S. dollars) and the dates thereof;

     d. the account details for any and all of Defendants' Financial Accounts, including, but not limited to, the account numbers and current account balances; and

     e. the steps taken by each Defendant, or other person served, to comply with **Section I** above.

2)  Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

3)  Plaintiff may serve requests for the production of documents pursuant to Fed. R. Civ. P. 26 and 34, and Defendants who are served with this Order and the requests for the production of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

B.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order the Financial Institutions served with this Order shall identify any and all of Defendants' Financial Accounts, and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendants, including contact information for Defendants (including, but not limited to, mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendants' Financial Accounts and confirmation of said compliance with this Order.

C.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order, the Third Party Service Providers served with this Order shall identify any and all interactive websites held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, on which they use the Off-White Marks, that they operate to communicate with consumers regarding their Counterfeit Products and/or through which consumers purchase

Counterfeit Products for delivery in the U.S., including, without limitation, Defendants' Website (collectively, "Infringing Websites"), and provide Plaintiff's counsel with a summary report, which shall include, at a minimum, identifying information for such websites (i.e., URLs), contact information for Defendants (including, but not limited to, mailing addresses and e-mail addresses) and confirmation of said compliance with this Order.

D. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days of receiving actual notice of this Order, all Financial Institutions who are served with this Order shall provide Plaintiff's counsel all documents and records in their possession, custody or control (whether located in the U.S. or abroad) relating to any and all of Defendants' Financial Accounts, including, but not limited to, documents and records relating to:

   a. account numbers;

   b. current account balances;

   c. any and all identifying information for Defendants and/or Infringing Websites, including, but not limited to, names, addresses and contact information;

   d. any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;

   e. any and all deposits and withdrawals during the previous year from each and every one of Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements; and

f. any and all wire transfers into each and every one of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number.

E. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days of receipt of service of this Order, the Third Party Service Providers served with this Order shall provide to Plaintiff's counsel all documents and records in their possession, custody or control (whether located in the U.S. or abroad) relating to Infringing Websites, including, but not limited to, documents and records relating to:

   a. account details, including, without limitation, identifying information and URLs for any and all accounts or websites that Defendants have ever had and/or currently maintain with the Third Party Service Providers that were not previously provided pursuant to Paragraph V(C);

   b. the identities, location and contact information, including any and all e-mail addresses of Defendants that were not previously provided pursuant to Paragraph V(C);

   c. the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Infringing Websites, a full accounting of Defendants' sales history and listing history under such accounts and Defendants' Financial Accounts with any and all Financial Institutions associated with Infringing Websites; and

d. Defendants' manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products, or any other products bearing the Off-White Marks and/or marks that are confusingly similar to, identical to and constitute an infringement of the Off-White Marks.

## VI.   Security Bond

A. IT IS FURTHER ORDERED that Plaintiff shall place security in the amount of Five Thousand Dollars ($5,000) with the Court which amount is determined adequate for the payment of any damages any person may be entitled to recover as a result of an improper or wrongful restraint ordered hereunder.

## VII.   Sealing Order

A. IT IS FURTHER ORDERED that Plaintiff's Complaint and exhibits attached thereto, and Plaintiff's *ex parte* Application and the Declarations of Brian Igel and Gabriela N. Nastasi in support thereof and exhibits attached thereto, and this Order shall remain sealed until the Financial Institutions and Third Party Service Providers comply with **Paragraphs I(B)-(C), III(A) and V(B)-(C)** of this Order.

**SO ORDERED.**

SIGNED this 25 day of August, 2023, at 5:15 p.m.

HON. LEWIS J. LIMAN
UNITED STATES DISTRICT JUDGE